**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**AT BECKLEY**

DANIEL PRICE and
LISA PRICE,

      Plaintiffs,

v.                                 CIVIL ACTION NO. 5:19-cv-00886

EQUIFAX INFORMATION SERVICES, and
ALLY FINANCIAL, INC.,

      Defendants.

**<u>MEMORANDUM OPINION AND ORDER</u>**

Pending is Defendant Ally Financial, Inc.'s ("Ally") Motion to Dismiss, filed February 11, 2020. [Doc. 17].

Plaintiffs Lisa and Daniel Price responded on February 25, 2020, and Ally replied on March 3, 2020. [Docs. 22, 24].

**I.**

Mr. and Mrs. Price ("the Prices") instituted this action on December 12, 2019. On January 28, 2020, the Prices amended their Complaint, alleging that Ally violated the Fair Credit Reporting Act ("FCRA"). [Doc. 14].

Ally was the lender, owner, and servicer of the Prices' auto loan. On February 12, 2015, the Prices instituted an action against Ally regarding its abusive loan servicing practices that mistakenly placed them in default. Ultimately, the parties agreed to settle the litigation for, *inter*

*alia*, Ally's promise to either request deletion of the credit tradeline, request deletion of all negative references to the account, or both, in order to accurately portray the status of the Prices' credit. The agreement was signed by all parties and effective April 14, 2015 ("settlement agreement").

Subsequently, the Prices applied for a truck loan in September 2018, but were told they only qualified for high interest rates given an alleged Ally charge off on their credit report. The Prices eventually received a loan but were told they would have qualified for 0.00% interest if not for the negative Ally information on their credit reports. Thereafter, the Prices obtained copies of their credit reports and learned they had not been updated pursuant to the settlement agreement. The Ally tradeline continued to reflect negatively.

The Prices disputed the information both with Ally in a September 2018 letter and through an online Equifax dispute mechanism. Ally failed to respond, and Equifax inexplicably advised the Prices that Ally was not reporting on their credit report. On November 13, 2019, the Prices sent another dispute to Equifax via mail and again notified Ally directly that it was incorrectly reporting each of them as in arrears on their account. Ally responded on November 20, 2019, stating that their account had a negative history, had been charged off, and had a current balance due of $7,622.26. Ally verified that the negative tradeline was accurate, despite the 2015 settlement agreement from the underlying case. Equifax responded to the second dispute in December 2019 and declared the disputes resolved based on its statement that Ally had verified the information reported.

The Prices' Complaint alleges that Ally violated Section 1681s–2(b)(1)(A)-(D) of the FCRA by failing to investigate allegedly inaccurate information on their credit reports after Ally was informed of the disputed information by Equifax.

On February 11, 2020, Ally filed the instant motion asserting that the Complaint fails to state a claim upon which relief may be granted. Ally first contends that the Complaint inaccurately states that it failed to comply with the 2015 settlement agreement by failing to request that the relevant credit reporting agencies ("CRA") delete the negative tradeline. Ally asserts that it fully complied with the settlement agreement by requesting that Equifax delete the Prices' tradeline and confirmed as much with their counsel as shown by Exhibit B, an email chain to counsel, which is attached to the motion to dismiss.[1]

Ally next contends that the Complaint should be dismissed inasmuch as (1) any investigation that confirmed the past due charge-off balance was accurate, and (2) the parties' settlement agreement expressly released Ally from all claims based on the action or inaction of any CRA. Ally further contends that the Complaint was filed in bad faith, is frivolous, unreasonable, and without foundation, thus warranting an award of attorney fees under 15 U.S.C. 1681n(c).

The Prices respond that Ally's motion to dismiss should be denied inasmuch as it fails to address the substance of Ally's investigations of their credit disputes. The Prices contend that Ally's Exhibit B is hearsay, as it is a third-party email, and is immaterial in any event at the Rule 12(b)(6) stage. The Prices assert that, regardless of the status of the underlying debt or Ally's purported efforts to correct the tradeline, the negative tradeline continues to appear on their credit reports, which is sufficient to warrant a trial to determine the reasonableness of Ally's investigation.

---

[1] The Prices contend that the email was never received inasmuch as there is a typographical error in their counsel's email address.

Last, the Prices contend their claims against Ally do not depend on any action by any CRA, and they have alleged sufficient facts to demonstrate Ally's failure to comply with its obligation to conduct a reasonable investigation of their disputes. Accordingly, the Prices assert that the motion to dismiss and Ally's request for attorney fees should be denied. Ally's reply is essentially a reassertion of the arguments raised in its original motion.

## II.

### A.    Governing Standard

Federal Rule of Civil Procedure 8(a)(2) requires that a pleader provide "a short and plain statement of the claim showing . . . entitle[ment] to relief." Fed. R. Civ. P. 8(a)(2); *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007). Rule 12(b)(6) correspondingly permits a defendant to challenge a complaint when it "fail[s] to state a claim upon which relief can be granted . . . ." Fed. R. Civ. P. 12(b)(6). Any defense presented under Rule 12(b)(6) "must be made before pleading if a responsive pleading is allowed." Fed. R. Civ. P. 12(b). Thus, the motion to dismiss must be filed before any answer to the complaint is filed. Additionally, and as an aside, any answer must be filed within thirty days of the issuance of the summons, except for situations wherein that timeline is enlarged by the court. Fed. R. Civ. P. 12(a).

The required "short and plain statement" must provide "'fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957), *overruled on other grounds*, *Twombly*, 550 U.S. at 562-63); *McCleary-Evans v. Maryland Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015). Additionally, the showing of an "entitlement to relief" amounts to "more than labels and conclusions . . . ." *Twombly*, 550 U.S. at 558. It is now settled that "a

formulaic recitation of the elements of a cause of action will not do." *Id.* at 555; *McCleary-Evans*, 780 F.3d at 585; *Giarratano v. Johnson*, 521 F.3d 298, 304 (4th Cir. 2008).

The complaint need not "forecast evidence sufficient to prove the elements of [a] claim," but it must "allege sufficient facts to establish those elements." *Wright v. N. Carolina*, 787 F.3d 256, 270 (4th Cir. 2015); *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (internal quotation marks and citation omitted). Stated another way, the operative pleading need only contain "[f]actual allegations . . . [sufficient] to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (noting the opening pleading "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."). In sum, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Twombly* 550 U.S. at 570.

The decision in *Iqbal* provides some additional markers concerning the plausibility requirement:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief. . . .'"
>
> Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not "show[n]" -- "that the pleader is entitled to relief."
>
> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume

5

> their veracity and then determine whether they plausibly give rise to an entitlement
> to relief.

*Iqbal*, 556 U.S. at 678-79 (citations omitted).

As noted in *Iqbal*, the Supreme Court has consistently interpreted the Rule 12(b)(6) standard to require a court to "'accept as true all of the factual allegations contained in the complaint . . . .'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Twombly*, 550 U.S. at 555); *see also South Carolina Dept. of Health and Environmental Control v. Commerce and Industry Ins. Co.*, 372 F.3d 245, 255 (4th Cir. 2004) (quoting *Franks v. Ross*, 313 F.3d 184, 192 (4th Cir. 2002)). The court is required to "draw[] all reasonable . . . inferences from those facts in the plaintiff's favor . . . ." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999).

"As a general rule, when considering a defendant's motion to dismiss, the court must base its decision solely on information obtained from the pleadings." *Hagy v. Equitable Prod. Co.*, 2011 WL 3031124, at *2 (S.D.W. Va. July 22, 2011) (quoting *John S. Clark Co., Inc. v. United Nat'l Ins. Co.*, 304 F.Supp. 2d 758, 763–64 (M.D.N.C. 2004)). However, "documents that are explicitly incorporated into the complaint by reference . . . and those attached to the complaint" may be considered. *Goines v. Valley Community Service Bd.*, 822 F.3d 159, 166 (4th Cir. 2016). Additionally, it is well established "that a court may consider documents … attached to the motion to dismiss, so long as they are integral to the complaint and authentic.'" *Six v. Generations Federal Credit Union*, 891 F.3d 508, 512 (4th Cir. 2018) (quoting *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.4d 700, 705 (4th Cir. 2007)).

## III.

### A.    Compliance with the Settlement Agreement

As a threshold matter, both parties devote a significant amount of time disputing whether Ally complied with the settlement agreement by requesting deletion of the negative tradeline. Additionally, the parties dispute whether the referenced email to the Prices' counsel may be considered at this stage.

Whether Ally initially requested deletion of the Prices' negative tradeline is immaterial to the Prices' underlying FCRA claims.[2] Accordingly, the Court declines to address these arguments. They have no bearing on whether the Prices have stated a claim under the FCRA.

### B.    FCRA Claims

Section 1681s-2(b)(1) of the FCRA "imposes certain duties on a creditor who has been notified by a credit reporting agency that a consumer has disputed information furnished by that creditor." *Johnson v. MBNA Am. Bank*, 357 F.3d 426, 429 (4th Cir. 2004). Specifically, Section 1681s-2(b)(1) provides that upon receiving notice of a dispute from a CRA, a furnisher shall:

(A) conduct an investigation with respect to the disputed information;

(B) review all relevant information provided by the consumer reporting agency…;

(C) report the results of the investigation to the consumer reporting agency; and

(D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis….

---

[2] The Prices asserted a breach of contract claim against Ally in their initial Complaint; however, the Prices' Amended Complaint eliminates this cause of action.

"Thus, FCRA requires furnishers to determine whether the information that they previously reported to a CRA is 'incomplete or inaccurate.'" *Saunders v. Branch Banking and Trust Co. of VA*, 526 F.3d 142, 148 (4th Cir. 2008) (quoting § 1681s-2 (b)(1)(D)). "In so mandating, Congress clearly intended furnishers to review reports not only for inaccuracies in the information reported but also for omissions that render the reported information misleading." *Id*. "Courts have held that a credit report is not accurate under FCRA if it provides information in such a manner as to create a materially misleading impression." *Id*. (citing *Dalton v. Capital Associated Indus., Inc.*, 257 F.3d 409, 415 (4th Cir. 2001); *Koropoulous v. Credit Bureau, Inc.*, 734 F.2d 37, 40-42 (D.C.Cir. 1984); *Alexander v. Moore & Assocs., Inc.*, 553 F.Supp. 948, 952 (D.Haw.1982).

Additionally, our Court of Appeals has made clear that "when a customer disputes a tradeline on a credit report through a CRA, the furnisher of the tradeline must conduct a 'reasonable,' rather than a superficial or minimal investigation." *Daugherty v. Equifax Info. Servs., LLC*, 2015 WL 6456572, at *6 (S.D.W. Va. Oct. 26, 2015) (citing *Johnson*, 357 F.3d at 430-31 (4th Cir. 2004)). "To satisfy the reasonable investigation standard, a data furnisher must conduct a 'searching inquiry' into the dispute." *Id*. (quoting *Jones v. Experian Information Systems, Inc., et al.*, 2012 WL 2905089, at *4 (E.D.Va. 2012)). Such an investigation "requires the data furnisher to go beyond a cursory review of internal records." *Id*. (citing *Johnson*, 357 F.3d at 431). "Nor may a data furnisher restrict an investigation to information provided by the CRA." *Id*. (internal citations omitted). "It is generally a question of fact for the jury as to whether a data furnisher conducted a reasonable investigation under Section 1681s-2(b)(1)(A)." *Id*. (internal citations omitted).

### 1.  Accuracy of Credit Information

Ally first contends that the FCRA claims should be dismissed inasmuch as the disputed information is accurate and, hence, the Prices failed to plausibly allege that Ally failed to conduct a reasonable investigation of their dispute. Specifically, Ally asserts it neither waived the Prices' account balance nor released the debt. Ally thus asserts that any subsequent investigation confirming the past due charge-off balance was accurate. This assertion is meritless.

Our Court of Appeals has held that "a consumer report that contains technically accurate information may be deemed 'inaccurate' if the statement is presented in such a way that it creates a misleading impression." *Saunders*, 526 F.3d at 148 (citing *Dalton*, 257 F.3d at 415-16). Here, although the settlement agreement did not waive the Prices' balance on the auto finance account or release the debt, Ally did agree to delete the negative tradeline. [*See* Doc. 21 at 3].[3] The Prices' Complaint alleges that the tradeline continues to appear on their credit reports despite Ally's assurance that the tradeline would be deleted. The Prices have sufficiently alleged creation of a misleading impression constituting inaccurate information under the FCRA. Moreover, whether technically accurate information is sufficiently misleading to qualify as inaccurate for purposes of the FCRA is generally a question to be determined by the trier of fact. *See Seamans v. Temple University*, 744 F.3d 853, 865 (3rd Cir. 2014); *Dalton*, 257 F.3d at 415.

### 2.  Release of Claims

Ally next contends that dismissal and an award of attorney fees are warranted

---

[3] Inasmuch as the settlement agreement is integral to the Prices' Complaint and there is no dispute as to its authenticity, the Court may consider the agreement at this stage. *See Six*, 891 F.3d at 512 (4th Cir. 2018).

inasmuch as the settlement agreement expressly released all claims against Ally premised on the action or inaction of any CRA, which includes the claims asserted in the Complaint.[4] Specifically, Ally asserts that inasmuch as its duty to conduct an investigation of the Prices' disputes was not triggered until it received notice of the same from Equifax, the Prices' claims are dependent on the actions of a CRA and must be dismissed. This assertion is unfounded.

The settlement agreement provides pertinently that the Prices shall:

> [a]cknowledge and agree that the credit reporting agencies are separate entities from Ally and that Ally cannot guarantee, warrant, or take responsibility for the performance of the credit reporting agencies in changing, updating, or making entries in relation to any credit information. Claimants warrant, declare, and covenant that they understand the limitations on Ally in this regard and that any action or inaction on the part of the credit reporting agencies shall not constitute a breach of this Agreement by Ally, nor shall it provide the basis for any claims against Ally, which claims are hereby specifically and expressly waived, discharged, and released.

[Doc. 21 at 4]. The Prices thus agreed that a CRA's action or inaction in "changing, updating, or making entries in relation to any credit information" could not form the basis of any claims brought against Ally. None of the Prices' asserted claims against Ally are dependent on the actions of Equifax. Ally's duties as a credit furnisher are wholly separate and independent from Equifax's duties as a credit reporting agency under the FCRA. *See* 15 U.S.C. §1681s-2.

**C.     Attorney Fees**

The FCRA provides that "[u]pon a finding by the court that an unsuccessful pleading, motion, or other paper filed in connection with an action under this section was filed in bad faith

---

[4] Ally also asserts that the settlement agreement contains a covenant not to sue Ally for *any* claim, thus warranting dismissal of the Complaint; however, inasmuch as this assertion was raised for the first time in Ally's reply brief, it will not be considered by the Court. *See Moseley v. Banker*, 550 F.3d 312, 325 n.7 (4th Cir. 2008) ("As a general rule, arguments not specifically raised and addressed in opening brief, but raised for the first time in reply, are deemed waived."); *Huskey v. Ethicon, Inc.*, 29 F.Supp.3d 736, 745 n.4 (S.D.W. Va 2014) ("[A]n argument raised for the first time in a reply brief or memorandum will not be considered.").

or for purposes of harassment, the court shall award the prevailing party attorney's fees...." 15 U.S.C. 1681n(c). Inasmuch as the Prices have plausibly alleged facts sufficient to state a claim for which relief may be granted under the FCRA, the Court denies Ally's request for attorney's fees. Indeed, the request for fees on so slender a reed is grossly inappropriate under the circumstances.

### IV.

Based upon the foregoing discussion, the Court **DENIES** Ally's Motion to Dismiss [**Doc. 17**]. The Clerk is directed to deliver a copy of this memorandum opinion and order to all counsel of record and to any unrepresented parties.

ENTERED: May 15, 2020



Frank W. Volk
United States District Judge

11